**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

Carlos Rodriguez Garcia,
    Plaintiff,

    v.

Cooperative Jardines, et al.,
    Defendants.

**Civil No. 03-2190 (JAG)**

## REPORT AND RECOMMENDATION

This matter is before the court on a motion for summary judgment submitted by defendant, Junta de Directores de Cooperativa Vivienda Jardines de San Ignacio ("Cooperativa"). The action arises out of allegations of violations of the Americans with Disabilities Act ("ADA"), Puerto Rico Law No. 44, and breach of contract claims against defendants by plaintiff, Carlos Rodriguez Garcia ("Rodriguez"). After reviewing the record and pertinent law, the court **RECOMMENDS** that defendant's motion be **GRANTED**. (See Docket No. 25.)

**I.    Summary Judgment Standard**[1]

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In order to defeat summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e). The court must view the record and all reasonable inferences in the light most favorable to the party opposing summary judgment. See id. If the court finds that some genuine factual issues remains, whose resolution could affect the outcome of the case, the court must deny the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 284 (1986). "The movant's burden is particularly rigorous when the disputed issue involves

---

[1] The court notes that the parties have complied with Local Rule 56.

questions of motive or intent, since in these cases jury judgments about credibility are typically thought to be of special importance." Lipsett v. Univ. of P.R., 864 F.2d 881, 895 (1st Cir. 1988).

In a discriminatory employment action case, a plaintiff "will rarely, if ever, be able to produce a 'smoking gun' that provides direct, subjective evidence of an employer's animus. Rather, a plaintiff must try to convince the fact finder to draw an inference from a broad array of circumstantial and often conflicting evidence..." Id. Even in these cases, however, the court will not refuse to grant summary judgment in favor of the defendant if the plaintiff's claim rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Suarez v. Pueblo Int'l Inc., 229 F.3d 49, 53 (1st Cir. 2000) (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

**II.     Procedural History and Relevant Factual Background**

This action was commenced on November 4, 2003. (Docket No. 1.) On April 28, 2005, Cooperativa filed its motion for summary judgment and accompanying statement of material facts, asserting plaintiff's lack of *prima facie* case. (Docket Nos. 25 & 26.) Cooperativa's memorandum focused greatly on the "major life activity" of working. On June 20, 2005, plaintiff filed his memorandum in opposition to the motion for summary judgment accompanied by his statement of material facts, particularly focusing on the "major life activity" of breathing. (Docket Nos. 35 & 36.) On July 5, 2005, Cooperativa filed its reply addressing the breathing issue. (Docket No. 40.) On November 14, 2005, the case was referred for report and recommendation. (Docket No. 53.)

*A.     Undisputed Facts*

The following facts are undisputed. Rodriguez began working for Cooperativa on October 16, 1991 as a maintenance worker. (See Docket No. 26, ¶ 1.) Rodriguez was employed as a full time and permanent employee. (Id. at ¶ 2.) Rodriguez's duties as a maintenance worker included, but were not limited to, sweeping, mopping, washing and waxing floors, collecting garbage, and cleaning the parking area, recreation areas and lobbies. (Id. at ¶ 3; Docket No. 36, ¶ 3.) Although on a few occasions Rodriguez had to paint, painting was not an essential function of his position. (See Docket No. 26, ¶ 4.)

On October 14, 1999, Rodriguez went to the State Insurance Fund ("SIF") claiming he

suffered from bronchial spasms. (Id. at ¶ 5.) During 1999 and 2000, Rodriguez continued to go to the SIF for his bronchial spasm condition. (Id. at ¶ 6.) On June 7, 2000, the SIF issued Rodriguez a discharge notice with a determination of no disability. (See Docket No. 36, ¶ 7.) Cooperativa received a letter from the SIF recommending that Rodriguez not be exposed to chemicals with a strong odor, or detergents, nor to products or aerosols like paint or irritating vapors. (See Docket No. 26, ¶ 8.) As part of his treatment, Rodriguez was ordered by his doctor to stop smoking, however, he continued to smoke until 2002. (Id. at ¶ 9.)

Rodriguez was diagnosed with arterial congestion in October 2000, and underwent surgery in November 2000 to have a pacemaker installed. (Id. at ¶¶ 13-14.) After surgery, Rodriguez obtained a medical certificate from Dr. Gilberto Rodriguez and reported to work on November 27, 2000. (Id. at ¶ 17; Docket No. 36, ¶ 17.) Dr. Rodriguez, an internist, did not perform Rodriguez's pacemaker surgery. (See Docket No. 26, ¶ 18.)

Rodriguez is aware that Cooperativa requested a second certificate to ensure that he was in good condition to return to work after his pacemaker surgery. (Id. at ¶ 21.) On December 18, 2000, Rodriguez presented a medical certificate from Dr. Jose Rivera stating that Rodriguez's pacemaker was in good working condition. (Id. at ¶ 22.) The certificate issued by Dr. Rivera did not address whether Rodriguez could perform the functions of his position. (Id. at ¶ 23.) Cooperativa instructed Rodriguez not to return to work until he could provide a medical certificate stating he was apt to return to work. (Id. at ¶ 24.)

On January 30, 2001, the SIF placed Rodriguez on leave due to an emotional condition. (Id. at ¶ 29.) On April 9, 2001, the SIF closed Rodriguez's case resulting from that emotional condition. (Id. at ¶ 30.)

### B. Disputed Facts

The following facts are strongly in dispute. First, the parties dispute Rodriguez's June 7, 2000 discharge from the SIF. Cooperativa asserts that Rodriguez was discharged due to his bronchial spasm condition. (See Docket No. 26, ¶ 7.) Rodriguez, on the other hand, asserts that he was not discharged for this condition given that several months prior, he had been found to have partial disability for a 10% loss of his general physiological functions. (See Docket No. 36, ¶ 7.)

**Civil No. 03-2190 (JAG)**                                          4

Additionally, Rodriguez asserts that on June 21, 2001, his chronic bronchitis condition was increased to 15% disability. (Id.)

Second, Cooperativa contends that upon learning of Rodriguez's condition, it made reasonable accommodations by eliminating some of Rodriguez's duties dealing with exposure to chemicals and strong odors. (Id. at ¶ 11.) Cooperativa later learned that, in his spare time and for his personal gain, Rodriguez used paint and other materials illegally taken from Cooperativa's warehouse to paint apartments for profit. (Id. at ¶ 12.) This was done after Rodriguez's doctor had ordered him not to be exposed to paint and other chemicals with strong odors, and after Cooperativa had made good-faith reasonable accommodations. (Id. at ¶¶ 11-12.) Rodriguez vehemently denies misappropriating Cooperativa's materials or using them for his personal benefit. (See Docket No. 26, ¶ 28.)

Finally, as a result of the misappropriation of materials, Cooperativa contends Rodriguez was suspended for thirty (30) days. (See Docket No. 36, ¶ 27.) Rodriguez was to return to work after the thirty days, but instead was placed on leave by the SIF. (Id. at ¶ 28.) At the end of his SIF leave, Rodriguez did not return to work nor requested to be reinstated. (Id. at ¶ 29.) Cooperativa claims it never fired Rodriguez and that he in effect abandoned his job by not coming back to work after his leave with SIF ended. (Id. at ¶ 31.)

Rodriguez asserts that he was not suspended and instead claims that the accusations against him was presented on or around December 20, 2000. (See Docket No. 26, ¶ 28.) Rodriguez asserts that by December 20, 2000, Cooperativa had already refused to reinstate him due to his failure to present an adequate medical certificate. (Id.) Rodriguez claims he was "constructively discharged and/or terminated" by being refused reinstatement. (See Docket No. 36, ¶ 31-32.) Rodriguez claims he requested reinstatement through his union – *Union General de Trabajadores* ("UTG"). (Id.)

**III.   Analysis**

  **A.   ADA claim**

The Americans with Disabilities Act ("ADA") was enacted to provide a clear, strong, consistent, and enforceable standard in addressing discrimination against individuals with disabilities. See 42 U.S.C. § 12101(b)(2). The ADA prohibits a covered entity from discriminating

against a qualified individual with a disability in an employment context, including but not limited to, job applications, the hiring process, compensation, and training. See 42 U.S.C. § 12112(a).

In order to survive a summary judgment motion, Rodriguez bears the burden of establishing a *prima facie* case of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999) (approving use of McDonnell-Douglas framework in connection with ADA claims of disability discrimination). Under this approach, Rodriguez must first establish a *prima facie* case that: 1) he suffers from a disability or handicap, as defined by the ADA; 2) he was nevertheless able to perform the essential functions of his job, either with or without reasonable accommodation; and 3) the adverse employment decision was based in whole or in part on his disability. See McDonnell-Douglas, 411 U.S. at 802; Benoit v. Technical Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003). If Rodriguez is able to satisfy these elements, then the burden shifts to Cooperativa to articulate a legitimate, non-discriminatory reason for its employment decision by producing credible evidence to demonstrate the same. See id. Finally, if Cooperativa offers such a reason, the burden shifts back to Rodriguez to proffer evidence establishing that Cooperativa's non-discriminatory justification is a mere pretext, cloaking discriminatory animus. See id. at 804.

A disability is defined by the ADA as: 1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; 2) having a record of such an impairment; or 3) being regarded as having an impairment. 42 U.S.C. § 12102(2). In the present case, it is undisputed that Rodriguez's chronic bronchitis condition is one that affects a major life activity – breathing. See 29 C.F.R. § 1630.2(i). However, Cooperativa does contest that Rodriguez's condition *substantially* affects his breathing. As Cooperativa correctly states, it is insufficient for an ADA plaintiff to only submit evidence of a medical diagnosis and must offer evidence demonstrating that the limitation is substantial in his own experience. See Toyota Motor Mfg., v. Williams, 534 U.S. 184, 198 (2001); Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1167 (1st Cir. 2002). In making this determination, the court will consider: 1) the nature and severity of the impairment, 2) the duration or expected duration of the impairment, and 3) the permanent or long term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2); Katz v. City Metal Co., 87

F.3d 26, 31 (1st Cir. 1996).

Cooperativa argues that plaintiff cannot pass muster on this initial element. The court agrees. Rodriguez alleges that his chronic bronchitis condition is severe and thus substantially affects his breathing. Rodriguez cites the SIF's determination on partial disability – 15% in 2001 – as main proof of this and uses a letter supplied to him by the SIF to show impairment. The letter details conditions that would exacerbate Rodriguez's condition and makes recommendations to his employer to keep him away from strong odors, detergents and chemical products. The letter also states that Rodriguez was not to be exposed to smoke or cigarettes, nor should he smoke. Yet, Rodriguez admits, and does not dispute, that he continued smoking through 2002 in direct contravention of the SIF and his doctor's orders. Rodriguez instead argues that his smoking is irrelevant and counters by arguing that Cooperativa never appealed the SIF's decision. What Rodriguez fails to recognize is that the ultimate burden of proving unlawful discrimination rests at all times with him. See Reeves v. Sanderson Plumbing Prod., Inc._, 530 U.S. 133, 143 (2000). Rodriguez, in essence, asks the court to overlook the fact that, <u>in his own experience, he himself deemed his condition non-severe and submitted himself to the very thing that would create hardship to his breathing</u>. To ignore this undisputed fact would be disingenuous. See Toyota, 534 U.S. at 197; Bailey, 306 F.3d at 1167. Rodriguez's continued smoking is evidence that his condition did not substantially limit his major life activity – breathing.

In light of Rodriguez's own admissions and the undisputed facts presented, Rodriguez cannot establish a *prima facie* case of discrimination based on disability. The court recommends that summary judgment be entered on behalf of Cooperativa on the ADA claim, as a matter of law. The court further notes that the disputed facts are not dispositive of the central issue.

### B.    *Supplemental State Claims*

Although Cooperativa only briefly mentions Rodriguez's supplemental state claims, these claims should be dismissed as well. The power of the federal court to hear and determine state law claims in non-diversity cases depends upon the presence of at least one substantial federal claim in the action. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991). Given that Rodriguez is not asserting any other federal claim besides the ADA claim, no other substantial federal claim exists.

**Civil No. 03-2190 (JAG)**                                        7

Thus, the court recommends that Rodriguez's state claims be dismissed as well.

**IV.    Conclusion**

For the aforementioned reasons, the court **RECOMMENDS** that Cooperativa's motion be **GRANTED**.  (Docket No. 25.)

Under the provisions of 28 U.S.C. § 636(b)(1)(B) and (c) and Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection with the Clerk of Court within ten (10) days of being served with a copy thereof.  The written objections must specifically identify the portion of the report and recommendation to which objection is made and the basis for such objection.  Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

**SO RECOMMENDED**.

In San Juan, Puerto Rico this 31st day of January 2006.

*S/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States Magistrate-Judge